AIRISHAD KIDD,

     Plaintiff,

v.

DAVID LILLY, MATTHEW VELDMAN,
and MICHELE GARCIA-BARGAS
in their individual and official capacities,

     Defendants.

CASE NO: 1:16-cv-00048
HON: ROBERT J. JONKER

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>SHAWN C. CABOT (P64021)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI 48386<br>(248) 886-8650<br>(248) 698-3321-fax<br>shawn.cabot@cjtrainor.com | PATRICK J. LANNEN (P35171)<br>ELLIOT J. GRUSZKA (P77117)<br>Attorneys for Defendants<br>300 Monroe Avenue, NW, Ste. 620<br>Grand Rapids, MI 49503<br>616-456-4026<br>616-456-4569-fax<br>plannen@grcity.us<br>egruszka@grcity.us |

## PLAINTIFF'S RESPONSE TO DEFENDANTS DAVID LILLY, MATTHEW VELDMAN, AND MICHELE GARCIA-BARGAS'S MOTION FOR SUMMARY JUDGMENT

### ORAL ARGUMENT REQUESTED

**NOW COMES** Plaintiff, **AIRISHAD KIDD,** by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and for his Response to Defendants' Motion for Summary Judgment states as follows:

     Plaintiff denies each and every allegation contained in Defendants' Motion and Brief and leaves them to their strict proofs.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion for Summary Judgment in its entirety for the reasons set forth in the attached Brief.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES

**BY:** **/s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
(248) 698-3321 – fax
shawn.cabot@cjtrainor.com

Dated: April 12, 2017
SCC/jrr

**CERTIFICATE OF SERVICE**
I hereby certify that on April 12, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: *all attorneys of record.*

s/Shawn C. Cabot (P64021)
Christopher Trainor & Associates
9150 Highland Road
White Lake, MI 48386
Phone: (248) 886-8650
shawn.cabot@cjtrainor.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

AIRISHAD KIDD,

     Plaintiff,

v.                                   CASE NO: 1:16-cv-00048
                                     HON: ROBERT J. JONKER

DAVID LILLY, MATTHEW VELDMAN,
and MICHELE GARCIA-BARGAS
in their individual and official capacities,

     Defendants.

| CHRISTOPHER TRAINOR & ASSOCIATES | PATRICK J. LANNEN (P35171) |
|---|---|
| CHRISTOPHER J. TRAINOR (P42449) | ELLIOT J. GRUSZKA (P77117) |
| SHAWN C. CABOT (P64021) | Attorneys for Defendants |
| Attorneys for Plaintiff | 300 Monroe Avenue, NW, Ste. 620 |
| 9750 Highland Road | Grand Rapids, MI 49503 |
| White Lake, MI 48386 | 616-456-4026 |
| (248) 886-8650 | 616-456-4569-fax |
| (248) 698-3321-fax | plannen@grcity.us |
| shawn.cabot@cjtrainor.com | egruszka@grcity.us |

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS DAVID LILLY, MATTHEW VELDMAN, AND MICHELE GARCIA-BARGAS'S MOTION FOR SUMMARY JUDGMENT

### ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**OVERVIEW** ............................................................................................................. 6

**STATEMENT OF FACTS** ...................................................................................... 6

**CORROBORATING FACTS** ................................................................................ 10

**LAW AND ARGUMENT** ..................................................................................... 14

**CONCLUSION** ..................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Metiva¸* 31 F.3d 375, 382 (6th Cir. 1994) .................................................................. 16

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 (1986).................................................. 14

*Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011) ................................................ 22

*Berg v. County of Allegheny,* 219 F.3d 261, 273 (3d Cir. 2000) .................................................. 21

*Bruner v. Dunaway,* 684 F.2d 422 (6th Cir. 1982 ...................................................................... 18

*Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986) ..................................................................... 14

*City of Indianapolis v. Edmond,* 531 U.S. 32, 37 (U.S. 2000)..................................................... 20

*Dunaway v. New York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (U.S. 1979) ................. 20

*Flyod v. City of Detroit* 518 F.3d 398, 406 (6th Cir. Mich. 2008)............................................... 18

*Gardenhire v Schubert,* 205 F.3d 303, 318 (6th Cir. 2000)......................................................... 24

*Graham v. Connor,* 490 U.S. 386. ............................................................................................... 16

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ........................................................................ 19

*Hope v. Pelzer,* 536 U.S. 730, 739 (2002) .................................................................................. 19

*Howard v. Calhoun Co.,* 148 F. Supp 2d 883, 887 (W.D. Mich. 2001) ...................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986) .................. 14

*Moore v. Detroit,* 252 Mich. App. 384, 387 (2002)..................................................................... 25

*Odom v. Wayne County,* 482 Mich. 459, 480 (2008) .................................................................. 23

*Pearson v. Callahan,* 555 U.S. 223, 236 (2009) ......................................................................... 19

*Peterson Novelties, Inc. v. City of Berkley,* 259 Mich. App. 1, 18 (2003).................................. 24

*Richardson v. Nasser,* 2009 U.S. Dist. LEXIS 114641 (E.D. Mich. 2009)................................. 23

*Robertson v. Lucas,* 753 F.3d 606, 618 (6th Cir. 2014)............................................................... 24

*Rothhaupt v. Maiden,* 144 Fed. Appx. 465(6th Cir. 2005) .......................................................... 21

*Saucier v. Katz,* 533 U.S. 194, 201 (2001) ................................................................................. 19

*See Johnson v. Jones,* 515 U.S. 304 (1995) ................................................................................ 20

*Smith v. Freeland,* 954 F. 2d 343, 345 – 347 (6th Cir. 1992) ...................................................... 16

*Tingay v. Dep't of Human Servs.,* 2014 U.S. Dist. LEXIS 129470 (W.D. Mich. 2014) ............. 23

*Tolan v. Cotton,* 134 S. Ct. 1861, 1865 (2014) ........................................................................... 19

*Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997)..................................................................... 18

*Walsh v. Taylor,* 689 N.W.2d 506, 513 (2004)........................................................................... 24

**Statutes**

42 U.S.C. §1983................................................................................................................................ 6

MCL 691-1407................................................................................................................................. 19

**Rules**

Fed. R. Civ. Proc. 56....................................................................................................................... 11

# I. OVERVIEW

This is a civil rights/police misconduct case brought pursuant to 42 U.S.C. §1983. Defendants used excessive force against Plaintiff, violating his Fourth Amendment right to be free from excessive force and unreasonable searches and seizures, during an arrest which occurred on March 22, 2014. During this incident, Defendants arrested and seized Plaintiff without any lawful justification whatsoever. In light of the arguments, evidence, and caselaw set forth herein, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in its entirety.

# II. STATEMENT OF FACTS

On March 22, 2014, Plaintiff was at his mother's home in Grand Rapids socializing with members of his family. **(Exhibit A, Plaintiff's Deposition, p. 32).** At some point, Plaintiff's brother started verbally harassing Plaintiff's niece, who was between nine and eleven years old at the time. **(Exhibit A, p. 35)**. Plaintiff told his brother to stop messing with Plaintiff's niece, but his brother continued the unacceptable behavior. **(Exhibit A, p. 35).** Eventually, Plaintiff jumped up and grabbed his brother and threw him to the floor because he would not stop messing with Plaintiff's niece. **(Exhibit A, p. 35).** This altercation caused Plaintiff's mother to call 911. **(Exhibit A, p. 36).** After calling 911, Plaintiff's mother suggested that Plaintiff step outside to cool off. **(Exhibit A, p. 36).**

As Plaintiff was exiting the home, Defendant Garcia-Bargas arrived and told Plaintiff to wait a moment while they investigated the 911 call. **(Exhibit A, p. 36).** After speaking with Plaintiff's mother, Defendant Lilly decided to allow Plaintiff to leave. Plaintiff began walking throughout the neighborhood, in an effort to separate himself from the situation. **(Exhibit A, p. 41).**

After Plaintiff had walked a few blocks, Defendant Lilly approached from behind Plaintiff and informed him that there was a warrant for his arrest out of Iowa. **(Exhibit A, p. 42).** Defendants

Veldman and Lilly got out of their vehicles and falsely arrested Plaintiff, grabbing him by the arm and forcing it behind his back. **(Exhibit A, p. 44).** After handcuffing Plaintiff, Defendant Lilly forced Plaintiff's arm up towards his head, causing Plaintiff to go up on his tiptoes and holler "awe, man you're hurting me, you're hurting me!" **(Exhibit A, p. 44).** Defendants Lilly and Veldman then slammed Plaintiff to the ground, injuring his knee. **(Exhibit A, p. 44).** Defendant Lilly proceeded to drag Plaintiff towards his police car and then forced Plaintiff to his feet, continuing to "jack" Plaintiff's arm up his back. **(Exhibit A, p. 44).** Eventually, Defendant Lilly and Defendant Veldman forced Plaintiff into the back of Defendant Lilly's vehicle. **(Exhibit A, p. 44).** Defendants looked into the warrant further and realized that it did not authorize extradition outside of the state of Iowa. **(Exhibit C, p. 40).** Upon realizing that they did not have any legal justification whatsoever for arresting Plaintiff, Defendants released him. **(Exhibit C, p. 40).** After being released, Plaintiff requested an ambulance because of injuries sustained as a result of Defendants Lilly and Veldman's excessive force. **(Exhibit A, p. 44).** Defendant Lilly took pictures of Plaintiff's injuries. **(Exhibit A, p. 72).** However, when Defendant Lilly attempted to download the images to his in-car computer, there was a technical error and the images were lost. **(Exhibit B, Defendant Lilly's Deposition, p. 63)**

Plaintiff was taken by ambulance to St. Mary's Hospital. **(Exhibit M, Plaintiff's Records from Life EMS Ambulance, p. 1).** At the hospital, x-rays were performed on Plaintiff's knee and Plaintiff was informed that he had bad swelling and bruising on his knee. Plaintiff was given pain pills and his knee was wrapped and braced. Plaintiff left the hospital on crutches. **(Exhibit G, Plaintiff's Medical Records from Mercy Health Saint Mary's, p. 6).** The ER department followed-up with Plaintiff by phone on March 23, 2014 and Plaintiff reported that he was still

experiencing pain. **(Exhibit G, p. 8).** Plaintiff had to keep his knee in a brace and use crutches for about two weeks after the incident. **(Exhibit A, p. 59).**

The injury to Plaintiff's right knee caused by Defendants plagues Plaintiff to this day. On August 19, 2014, Plaintiff visited his primary care physician due to aching pain in his right knee that was causing difficulty sleeping, joint instability, joint tenderness, limping, locking, numbness, popping, swelling and weakness. **(Exhibit I, Plaintiff's Medical Records from Cherry Street Health Center, p. 1).** At this appointment, Plaintiff was wearing a knee brace and was taking Vicodin for the pain. **(Exhibit I, p. 1).** The record from this visit notes that the injury resulted from trauma 6 months before where Plaintiff was arrested and **"thrown down to the floor." (Exhibit I, p. 1)**. Plaintiff reported that he had persistent pain since the incident that is "always 10/10 on a 10 pt. scale." **(Exhibit I, p. 1).** Plaintiff's doctor ordered an x-ray of Plaintiff's right knee and prescribed Cymbalta and ibuprofen for the chronic pain. **(Exhibit I, p. 3).** Plaintiff returned for a follow-up appointment on September 22, 2014. **(Exhibit I, p. 4).** At that appointment, Plaintiff reported that Cymbalta was not providing relief of his knee pain. **(Exhibit I, p. 4).** Plaintiff also reported that he experienced intermittent swelling with constant pain that is aggravated by activity and certain positions. **(Exhibit I, p. 4).** Plaintiff's doctor reviewed the x-rays that were performed on September 19, 2014 and reported that the x-ray found evidence of moderate arthritis and effusion (accumulation of excess fluid around the knee joint). **(Exhibit I, p. 5).** To address Plaintiff's pain, his doctor prescribed 800 mg ibuprofen 3 times per day. **(Exhibit I, p. 5).**

Plaintiff dealt with ongoing pain in his knee for over 6 months and eventually visited his primary care physician again on June 29, 2015 to address his severe and ongoing pain. **(Exhibit I, p. 7).** Plaintiff reported to his doctor that his pain was moderate to severe and occurred constantly with some fluctuation. **(Exhibit I, p. 7).** Plaintiff's pain was aggravated by climbing stairs,

movement, sitting, walking, and standing. **(Exhibit I, p. 7).** Plaintiff described his pain as aching and sharp. **(Exhibit I, p. 7).** Plaintiff's doctor ordered an MRI and referred Plaintiff to an orthopedic surgeon. **(Exhibit I, p. 9).**

An MRI of Plaintiff's knee was performed on July 19, 2015 at Butterworth Hospital. **(Exhibit J, Plaintiff's Medical Records from Butterworth Hospital, p. 1).** The MRI found extensive tearing of the lateral meniscus (the band of cartilage that spans the side of the knee joint), a medial meniscal tear (the band of cartilage that spans the middle of the knee joint), moderate to severe osteoarthritis in a lateral compartment (one of the four compartments in the leg between the knee and foot) predominance, and abnormal appearance to the anterior cruciate ligament (one of the four main ligaments within the knee that connect the femur to the tibia). **(Exhibit J, p. 1).** The orthopedic surgeon reviewed Plaintiff's records and found that "the distal femur (the portion of the femur that attaches to the knee), proximal tibia (the portion of the tibia that attaches to the knee) and patella (kneecap) show marked degenerative changes with lateral patellar (the tendon largely responsible for knee extension) joint space narrowing. Alignment is valgus (meaning that the knee is not perfectly aligned)." **(Exhibit K, Plaintiff's Medical Records from Spectrum Health Orthopedic Surgery, p. 1).**

In April of 2016, Plaintiff went to physical therapy for his knee pain. At his initial physical therapy examination, it was noted that Plaintiff had been suffering from knee pain for two years. **(Exhibit L, Plaintiff's Records from Good Life Physical Therapy, p. 1).** Edema and swelling were noted in the medial (mid) and lateral (side) compartments of the knee. **(Exhibit L, p. 1).** It was observed that Plaintiff demonstrated "decreased [right] knee strength and decreased ability to contract right knee." **(Exhibit L, p. 1).** The physical therapist also noted that flexion and extension of the [right] knee [were] limited and plaintiff reported with passive (movement of the knee by the

physical therapist) and active (movement of the knee by Plaintiff) range of movement. **(Exhibit L, p. 1).**

## III.  CORROBORATING FACTS

**A.  Plaintiff's Deposition (Exhibit A):**

- While out walking, Plaintiff was not aware of Defendants in their patrol cars until one of them yelled out "Mr. Kidd, you've got a warrant for your arrest." **(pp. 42, 61).**

- Defendants never asked Plaintiff to put his hands behind his back. **(pp. 65, 67).**

- Plaintiff complied with Defendants' attempts to force his hands behind his back. **(p. 45).**

- Defendant Lilly grabbed Plaintiff by the wrist and pushed his arm way up his back. Defendant Lilly then grabbed his other wrist and pulled it behind his back, forcing his hand toward his shoulder. **(pp. 66-67).**

- Defendant Veldman was standing within arm's reach while Plaintiff was being handcuffed. Defendant Garcia-Bargas was standing nearby in the street. **(pp. 46, 68).**

- When Plaintiff was handcuffed, his hands were not at his waist but were up in the upper part of his back, where they had been forced by Defendant Lilly. **(p. 67).**

- When Defendants handcuffed Plaintiff they pushed his arms up, causing him to go up onto his tiptoes and holler "you're hurting me, you're hurting me!" **(p. 46).**

- After Plaintiff was slammed on the ground and dragged around by Defendant Lilly, Defendants Lilly and Veldman forced plaintiff to a standing position and walked him to Defendant Lilly's patrol car. **(pp. 48-49, 70).**

- Plaintiff cooperated with Defendants during his interaction with them and obeyed every instruction he was given. Plaintiff never physically resisted Defendants or verbally threatened to injure them. **(pp. 53, 60).**

- Plaintiff never tried to flee from defendants. **(p. 62).**

- Plaintiff requested that they call an ambulance because his knee was hurting and had started to swell. **(p. 44).**

- Plaintiff was never charged with any crime, nor was he issued a ticket. **(p. 70).**

- Plaintiff complained that the handcuffs were put on too tight. When they were removed there was a big print on his wrist that lasted about a day. **(p. 73).**

**B.** **Defendant Lilly's Deposition (Exhibit B):**

- Defendant Lilly was familiar with Plaintiff from prior contact with him. **(p. 13).**

- Defendant Garcia-Bargas told Plaintiff that he could not leave the scene when Defendants responded to the 911 call. After it was determined that charges were not being pressed, Defendants let Plaintiff leave. **(pp. 23, 26).**

- Defendant Lilly recalled that he had heard from another Grand Rapids police officer that Plaintiff had a warrant **(p. 35).**

- Defendant Veldman spotted Plaintiff and informed the other two Defendants of Plaintiff's location over the radio. **(p. 43).**

- Plaintiff never struck or punched Defendants. **(p. 51).**

- When Defendant Lilly forced Plaintiff back up after Plaintiff was on the ground, Plaintiff immediately complained about being thrown to the ground and hurting his knee. Plaintiff complained more than once about his knee hurting. **(pp. 55, 57).**

- Defendant Lilly did not activate his in-car video system until after Plaintiff was already detained in the back seat. **(p. 61).**

- Defendant Lilly observed that Plaintiff's knee was swollen. After Plaintiff complained that Defendants hurt his knee, Defendant Lilly noticed that Plaintiff was limping. **(pp. 69, 76).**

**C.** **Defendant Veldman's Deposition (Exhibit C):**

- Defendant Veldman "forgot" to activate his in-car video before exiting his car to arrest Plaintiff. **(p. 8).**

- Defendant Veldman had met Plaintiff before on at least one occasion. **(p. 18).**

- When Defendant Lilly was on route to the scene of the initial 911 call, he called dispatch and requested a warrant check for Plaintiff's name. Dispatch reported that there was no warrant for Plaintiff. **(p. 27).**

- Defendant Lilly ran a second warrant check on his in-car computer and saw that a warrant was listed for Plaintiff. **(pp. 36-38).**

- Defendant Veldman happened upon Plaintiff as Plaintiff was walking down Cutler Street. Defendant Veldman did not observe that Plaintiff was stumbling around or limping at that time. **(p. 38).**

- At no time did Plaintiff strike Defendant Veldman or attempt to strike him. **(p. 44).**

- Plaintiff never tried to flee. **(p. 44).**

- Defendant Veldman physically took ahold of Plaintiff's right wrist to apply a handcuff. **(p. 45).**

- Plaintiff did not try to pull away from Defendant Veldman. **(p. 45).**

- Plaintiff was not trying to assault or kick any of the Defendants. **(p. 47).**

- Defendant Lilly escorted Plaintiff to his patrol car. **(p. 48).**

- When Plaintiff was forced onto the ground, his knee made contact with the cement. **(p. 49).**

- Officer Lilly pulled Plaintiff up off the ground. **(p. 51).**

- Plaintiff complained about his knee immediately after it hit the ground. Plaintiff also complained about his wrist hurting. Plaintiff continued to complain about his knee and wrists while he was handcuffed in the back of Defendant Lilly's vehicle. **(p. 52).**

- Defendant Lilly told Defendant Veldman that the warrant for Plaintiff was out of pickup range; so Defendant Veldman un-handcuffed Plaintiff and got him out of the car. **(pp. 54-55).**

- After the handcuffs were removed Plaintiff continued to complain about pain in his knee and wrist. **(p. 56).**

- Defendant Veldman admitted that it is a policy of the Grand Rapids Police Department for officers to turn on their in-car video when making contact with a citizen. **(p. 58).**

**D.     Defendant Garcia-Bargas' Deposition (Exhibit D):**

- Defendant Garcia-Bargas testified that the Grand Rapids Police Department has a policy requiring in-car video to be turned on when officers makes contact with a citizen in their full duty capacity. **(p. 24).**

- Defendant Lilly requested that dispatch run a LEIN check of Plaintiff while he was on route to the scene. **(p. 32).**

- Defendant Lilly eventually ran a second warrant check and discovered a warrant for Plaintiff and informed the other Defendants over the radio. **(p. 34).**

- When Defendant Garcia-Bargas came upon Plaintiff the second time, Defendants Veldman and Lilly were attempting to take Plaintiff into custody. **(p. 37).**

- Defendant Garcia-Bargas testified that there should have been in-car video running while Defendants Veldman and Lilly were interacting with Plaintiff. **(p. 40).**

- Defendant Garcia-Bargas saw Defendants Veldman and Lilly handcuff Plaintiff. Specifically, Defendant Garcia-Bargas testified that she was 15 feet away from Plaintiff when he was handcuffed. **(pp. 40-41).**

- Plaintiff complained about being injured when he was outside of Defendant Lilly's cruiser after he was released. **(p. 47).**

**E.** **In-car video from Defendant Lilly's patrol vehicle (Exhibit H):**

- Plaintiff: Ain't no warrant nowhere.
  Defendant Lilly: Its right here Airishad.
  Plaintiff: It's child support.
  Defendant Lilly: It ain't child support.
  Plaintiff: It is child support
  Defendant Lilly: Let me run him…Ah never mind, it says extradition state of Iowa only
  **(01: 52 to 02:18)**

- Plaintiff: Ya'll hurt me. Ya'll hurt me. My wrist hurts, Ya'll slammed me on the ground. **(02:30 to 02:40).**

- Plaintiff: I'm hurtin'. My wrist and my arm. Ya'll slammed me on the ground. It hurt like a mofo. **(03:00 to 03:17).**

- Plaintiff can be seen holding his right knee and lifting his pant leg to check the injury. Plaintiff can also be seen holding his left wrist and examining it. **(04:16 to 4:52).**

- Plaintiff has a visible limp when walking and is favoring his right leg. **(06:11 to 06:40).**

- Defendant Lilly takes pictures of Plaintiff's injuries. Plaintiff can be heard saying "It hurts. It hurts right here. And my knee hurts." **(07:28 to 07:40).**

- Radio call comes in that confirms that the warrant says Iowa is not willing to extradite. **(13:30).**

- Plaintiff is visibly limping as he walks toward the ambulance. **(13:30 to 13:40).**

**F.** **Plaintiff's Medical Records from Mercy Health Saint Mary's (Exhibit G):**

- 3/22/14: Plaintiff presented with right knee pain and swelling after being arrested and forced to his knees by police. Plaintiff stated that he was having difficulty bending his knee and was unable to bear weight on his right lower extremity. **(p. 1).**

- 3/22/14: Ambulance report stated that Plaintiff "states he was walking home from his mother's house where police were called for a situation. [Plaintiff] was walking down the street and was stopped by police. [Plaintiff] states that the police made him get on his knees to get handcuffed." **(p. 2).**

## LAW AND ARGUMENT

## I.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. Proc. 56, a party may make a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When evaluating a motion for summary judgment, the court must look beyond the pleadings and consider all facts in evidence to determine whether there is a genuine issue of material fact. *Howard v. Calhoun Co.*, 148 F. Supp. 2d 883, 887 (W.D. Mich. 2001).

The moving party bears the initial burden of proving that their motion is warranted by identifying what portions of the nonmoving party's case establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986). The court must then consider all facts in the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986). In the end, the court may only grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita supra* at 587. Ultimately, the court must decide whether the evidence presented raises a sufficient disparity to submit to a jury or whether the issue is so one-sided that one party obviously prevails as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

In this case, Defendants cannot meet their burden of proving that Plaintiff's claims present no genuine issue of material fact for trial. The depositions and other evidence submitted clearly illustrate that Defendants and Plaintiff are in significant disagreement as to many of the material

facts of Plaintiff's claims. Considering all facts in the record in the light most favorable to Plaintiff, the Court must therefore decide in Plaintiff's favor. Therefore, Defendants' Motion for Summary Judgment must be DENIED in its entirety.

## II.     PLAINTIFF'S EXCESSIVE FORCE CLAIM

Defendants have erroneously argued that Plaintiff's clearly established right to be free from excessive force was not violated because any and all force used by Defendants was reasonable. This is not supported by the record. Again, for the reasons set forth herein, Defendants' arguments must fail.

### A.     Based on the evidence presented, the court is permitted to make the reasonable inference that Plaintiff was gratuitously thrown to the ground and dragged.

As stated above, summary judgment must be denied when the record as whole could lead a reasonable finder of fact to find for the nonmoving party. *Matsushita supra* at 587. Defendants argue that there is no genuine issue of material fact that the amount of force Defendants used was reasonable. Defendants state that it is undisputed that Defendant Veldman used only the amount of force necessary to bring Plaintiff's hands together during arrest. This is untrue in light of Plaintiff's deposition testimony. Specifically, Plaintiff testified that Defendant Veldman grabbed him by the arm and "instead of putting it down, he pushed it up. And when he pushed it up I went up on my tippy toes hollering like: Awe, man, you're hurting me, you're hurting me!" **(Exhibit A, Plaintiff's Deposition, p. 44).** Defendants also contend that it is undisputed that Plaintiff fell, as opposed to being thrown to the ground, as Plaintiff contends. This is again untrue in light of Plaintiff's deposition testimony. Plaintiff repeatedly states that he was thrown on the ground by Defendants Veldman and Lilly, Plaintiff never stated that he fell. **(Exhibit A, pp. 46-48).** Clearly, there is a significant disparity of facts in this case that requires consideration by a jury.

In their Brief, Defendants go on for at least four pages arguing that Plaintiff's claims that he was thrown to the ground and dragged are not plausible in the wider factual context of this case. Defendants' emphasis on the plausibility of Plaintiff's claims misconstrue the plausibility standard applied in summary judgment cases. As established by the Sixth Circuit, "the trial court may only inquire into the plausibility of circumstantial evidence, and…when the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." *Adams v. Metiva*¸ 31 F.3d 375, 382 (6th Cir. 1994).   Further, Plaintiff's medical records from his treatment after the incident establish that his claims are more than plausible. Specifically, Plaintiff's ER records from Saint Mary's Hospital state that Plaintiff "present[ed] with right knee pain and swelling after being arrested and forced to his knees by police. [Plaintiff] states he is having difficulty bending his knee and is unable to bear weight on his right lower extremity. The degree [of pain] at present is 10/10." **(Exhibit G, p. 1).**

**B.      The amount of force used by Defendants Veldman and Lilly was unreasonable and/or excessive.**

The Fourth Amendment to the United States Constitution guarantees every citizen the right to be free from unreasonable searches and seizures. The Fourth amendment strictly limits the amount of force a police officer can use during arrest. *Graham v. Connor*, 490 U.S. 386 (1989). When reviewing a police officer's use of force, the Court asks whether a reasonable officer on the scene would have employed a similar degree of force. *Smith v. Freeland*, 954 F. 2d 343, 345 – 347 (6th Cir. 1992). An objective standard is used to determine the reasonableness of the force used in a particular situation. This analysis is done in light of all the facts in the record, looking at the "reasonableness of the moment" of the force used. *Graham, supra.* A court must consider the facts and circumstances surrounding the arrest or seizure, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

the citizen is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396-397. The second and third *Graham* factors are at issue here because Plaintiff was not involved in any type of serious crime.

As to the second factor, the totality of the circumstances present in this case show that the level of force used by Defendants was unreasonable, particularly in light of the low to no risk Plaintiff posed to the safety of Defendants. Defendants rely heavily on the fact that the warrant at issue in this case stated that Plaintiff had violent tendencies. However, this fact cannot be considered in isolation. As established above, this Court must consider all the facts in the record in making its decision on Defendant's motion. *Matsushita supra.* Plaintiff did not exhibit any violent tendencies toward Defendants at any time during this incident. In fact, in their depositions, Defendants Veldman and Lilly both testified that Plaintiff never tried to physically assault them. **(Exhibit B, Defendant Lilly's Deposition, p. 51; Exhibit C, Defendant Veldman's Deposition, p. 44).** Therefore, it is clear that the risk of harm Plaintiff posed to the safety of Defendants was essentially non-existent.

Regarding the third factor, Plaintiff was not resisting arrest or attempting to flee from Defendants. In fact, Defendant Veldman admitted in his deposition that Plaintiff did not try to flee. **(Exhibit C, p. 44).** Further, Plaintiff repeatedly testified in his deposition that he complied with Defendants' instructions. **(Exhibit A, p. 45, 53).** Therefore, viewing the facts in the light most favorable to Plaintiff, it is clear that Defendants' use of force against Plaintiff was unreasonable and/or excessive.

The Sixth Circuit has established that "various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004). In the case at hand, Plaintiff was thrown to the

ground **after he had been forcefully handcuffed by Defendant Lilly.** Pursuant to Sixth Circuit precedent, this use of force by Defendant Lilly was per se unreasonable and/or excessive.

## C.     Defendant Garcia-Bargas can be held liable for failure to intervene

It has been continually emphasized that an officer is not required to have contact with a plaintiff to be liable. The Sixth Circuit has repeatedly held that police officers who stand by and do nothing while a plaintiff is subjected to excessive force can be held liable under §1983. *Turner v. Scott*, 199 F.3d 425, 429 (6th Cir. 1997). *See also Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982). Officers who fail to intervene after witnessing excessive force shall be held liable if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd v. City of Detroit* 518 F.3d 398, 406 (6th Cir. Mich. 2008) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). In *Floyd*, the Court held a defendant officer liable for failing to act to protect plaintiff from another officer's use of force. *Id.* at 18.

In the instant case, Defendant Garcia-Bargas argues that she cannot be held liable because she arrived on the scene only after Plaintiff was already in handcuffs and took no part in escorting Plaintiff to the police vehicle. This argument contradicts Defendant Garcia-Bargas' deposition testimony. Specifically, Defendant Garcia-Bargas testified that she came on the scene as Defendants Veldman and Lilly were attempting to take Plaintiff into custody. **(Exhibit D, Defendant Garcia-Bargas's Deposition, p. 37).** Further, Defendant Garcia-Bargas went on to clarify that she was 15 feet away when Plaintiff was handcuffed and saw Defendants Veldman and Lilly handcuff Plaintiff. **(Exhibit D, pp. 40-41).** Therefore, in light of her own testimony, Defendant Garcia-Bargas clearly observed that excessive force was being used against Plaintiff

and had the opportunity and means to prevent Plaintiff from being harmed. Nonetheless, Defendant Garcia-Bargas failed to intervene on Plaintiff's behalf.

**D.      Defendants are not entitled to qualified immunity**

Qualified immunity it a **privilege** granting immunity to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining the applicability of qualified immunity at the summary judgment stage requires that the court utilize a two-pronged test. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). The first prong looks to whether the facts "[t]aken in the light most favorable to the party asserting the injury…show the officer's conduct violated a [federal right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It has been clearly established that persons have a right to be free from the excessive use of force by officers during arrest, as set forth by the Fourth Amendment. As such, the first prong is met.

The second prong looks to whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The Court in *Hope* held that "for a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" "[T]he salient question … is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id* at 741.

Courts have the individual discretion as to the order in which they evaluate these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regardless, the court in *Tolan v. Cotton* emphasized that qualified immunity cases emphasize the importance of drawing inferences in favor of the nonmoving party in summary judgment motions. As such "**courts may not resolve**

**genuine disputes of material fact in favor of the party seeking summary judgment.**" *Cotton,*

*supra* at 1866. The *Cotton* court went on to state the following:

> This is not a rule specific to qualified immunity; it is simply an application
> of the more general rule that a "judge's function" at summary judgment is not
> "to weigh the evidence and determine the truth of the matter but to determine
> where there is a genuine issue for trial." Summary judgment is appropriate
> only if "the movant shows that there is no genuine issue as to any material
> fact and the movant is entitled to judgment as a matter of law. In making that
> determination, a court must view the evidence "in the light most favorable to
> the opposing party." Our qualified immunity cases illustrate the importance
> of drawing inferences in favor of the nonmovant…(internal citations
> omitted).

In considering whether a constitutional violation occurred, if the defendant challenges the

plaintiff's version of the facts, an issue of fact is created, and qualified immunity must be denied.

*See Johnson v. Jones*, 515 U.S. 304 (1995).

As set forth herein, Defendants violated Plaintiff's clearly established constitutional rights,

and they had fair notice at the time that their actions amounted to constitutional violations against

Plaintiff. As such, qualified immunity must be denied

## II.     PLAINTIFF'S UNREASONABLE SEIZURE CLAIM

With respect to unreasonable search and seizure claims, "The Fourth Amendment requires

that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the

absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32,

37 (U.S. 2000)(citing *Chandler v. Miller*, 520 U.S. 305, 308, 137 L. Ed. 2d 513, 117 S. Ct. 1295

(1997). Moreover, "seizures are reasonable for purposes of the Fourth Amendment only if based

upon probable cause." *Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (U.S.

1979). Probable cause 'depends on whether at that moment [of arrest,] the facts and circumstances

within [the officer's] knowledge and of which [he] had reasonably trustworthy information were

sufficient to warrant a prudent man in believing that the [arrestee] had committed or was

committing an offense." *Rothhaupt v. Maiden,* 144 Fed. Appx. 465 (6th Cir. 2005)*(citing Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). The court in *Rothhaupt* emphasized that **probable cause is normally a question left to the jury unless it is clear that only one determination is possible.** *Id.* at 469.

A.     **Defendants did not have probable cause to arrest Plaintiff based on the Iowa warrant.**

Defendants argue that probable cause existed for the arrest of Plaintiff because there was a warrant for Plaintiff's arrest from the State of Iowa. This ignores that fact that it was eventually discovered that Defendants could not arrest Plaintiff pursuant to this warrant because they were out of the pickup range of the warrant. Defendants also ignore the fact that the warrant never permitted arrest of Plaintiff outside of pick-up range. Defendants did not discover this until after they had already placed Plaintiff in custody, subjected him to excessive force, and injured him. All because the entire document was not viewed. Immunity is generally extended to officers who make arrests based on an objectively reasonable belief that there is a valid warrant. However, **"an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances."** *Berg v. County of Allegheny,* 219 F.3d 261, 273 (3d Cir. 2000). "Such circumstances include, but are not limited to**, other information that the officer possesses or to which he has reasonable access**, and whether failing to make an immediate arrest creates a public threat or danger of flight." *Id.*

Therefore, in order for Defendant Lilly to know that he was outside of the pick-up range of the Iowa warrant, he simply had to scroll further down the computer page. This much was admitted by Defendant Garcia-Bargas in her deposition. **(Exhibit D, p. 49).** Further, Defendant Veldman testified that he would expect an officer to scroll down and read the entirety of a LEIN report. **(Exhibit C, p. 35).** Defendant Lilly clearly possessed, and had reasonable access to, the

information that would have prevented Plaintiff from being wrongfully arrested. Despite this fact, Defendant Lilly unreasonably relied on the warrant without thoroughly reading it.

**B.** **Defendants are not entitled to qualified immunity from Plaintiff's unreasonable seizure claim**

The question in the case at hand is not whether the out-of-state warrant created probable cause, as Defendants assert. Rather, it is whether it has been established that a citizen's constitutional right to be free from unreasonable seizures is violated when a police officer fails to thoroughly read a warrant before acting on it and ultimately falsely arrests someone. The testimony of Defendants Veldman and Garcia-Bargas makes it clear that Defendant Lilly's actions were unreasonable. Defendant Garcia-Bargas stated in her deposition that the information that Defendants were out of the pick-up range of the warrant would have been easily obtained by simply scrolling down the computer screen. **(Exhibit D, p. 49).** In fact, Defendant Veldman stated that he would expect an officer to scroll down the screen and read the whole warrant before acting on it. **(Exhibit B, p. 35).**

Defendants argue that it was not clearly established that the existence of a valid, out-of-jurisdiction warrant that is out of extradition range does not give rise to probable cause to arrest. This argument is nonsensical. Because the warrant was out of state, and gave no authority to arrest outside of the state of Iowa, there was no probable cause for the arrest of Plaintiff. For a right to be "clearly established" it is not required that there be cases that deal with precisely the same issue. *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011). Rather, all that is required is that "existing precedent must have placed the statutory or constitutional question beyond debate. *Id.* As previously stated herein, "the salient question . . . is whether the state of law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Hope supra* at 741.

As established herein, Defendants violated Plaintiff's clearly established constitutional right to be free from unreasonable seizures when they arrested him even when the Iowa warrant did not authorize Plaintiff's arrest. Therefore, Defendants are not entitled to qualified immunity from Plaintiff's unreasonable seizure claim.

## III.    PLAINTIFF'S STATE LAW CLAIMS FOR FALSE ARREST/FALSE IMPRISONMENT

### A.    Defendants are not protected by governmental immunity

Defendants assert that they are entitled to immunity from Plaintiff's false arrest/false imprisonment claim pursuant to the Governmental Tort Liability Act ("GTLA") (MCL 691-1407, *et. seq.*). As set forth in *Tingay v. Dep't of Human Servs.*, 2014 U.S. Dist. LEXIS 129470 (W.D. Mich. 2014) "[G]overnmental immunity is an affirmative defense regarding which Defendants bear the burden." **(Attached as Exhibit E)**. Under the GTLA, employees of a governmental agency are protected by governmental immunity if all the following are met: "(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority; (b) the acts were undertaken in good faith, or were not undertaken with malice, and; (c) the acts were discretionary, as opposed to ministerial." *Odom v. Wayne County,* 482 Mich. 459, 480 (2008). It was been further established that "a defendant-employee does not act with good faith when he 'does not act honestly,' but with 'a wanton or reckless disregard for the rights of another." *Richardson v. Nasser,* 2009 U.S. Dist. LEXIS 114641 (E.D. Mich. 2009). **(Attached as Exhibit F).**

Defendants certainly cannot meet their burden of establishing that they are entitled to governmental immunity. As to the first factor, it cannot be shown that it was reasonable for Defendants to believe that they were acting within the scope of their authority. Falsely arresting

and imprisoning Plaintiff without thoroughly investigating the pick-up range of a warrant cannot be said to be within the scope of Defendants authority as police officers.

In addition, it cannot be proven that Defendants' actions in arresting Plaintiff were undertaken in good faith. As established above, good faith is not met when a person acts with "a wanton or reckless disregard for the rights of another." *Id.* Defendants certainly acted with reckless disregard for Plaintiffs rights in arresting him without being sure that they were within the pick-up range of the warrant on which they were acting and without scrolling through the entire LEIN report.

"Ministerial acts constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. Discretionary acts require personal deliberation, decision, and judgment." *Odom supra* at 226. Here, it cannot be said that Defendants used their discretion. Defendants did not take time to thoroughly investigate the out-of-state warrant and whether it constituted probable cause to arrest. Instead, they exhibited single-minded obedience to their duties, as though they had no discretion to make a more thorough investigation.

**B.      Defendants are liable for falsely arresting/imprisoning Plaintiff**

A false arrest claim under Michigan law requires a showing that Defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so." *Walsh v. Taylor*, 689 N.W.2d 506, 513 (2004) (emphasis added). With respect to a false arrest claim, "a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause [and] [w]hether the plaintiff could actually have been convicted is irrelevant because actual innocence is not an element of false arrest." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003).

Probable cause is the heart of a false arrest claim. To state such a claim, Plaintiffs must show that there was a lack of probable cause to pursue an arrest of Plaintiff. *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v Schubert,* 205 F.3d 303, 318 (6th Cir. 2000). Furthermore, "in obtaining such reliable information**, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence**. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Id.* Given the facts as presented herein, it has been established that Defendants did not have probable cause to arrest Plaintiff.

The elements of a false imprisonment claim are: (1) acts committed with the intention of confining another; (2) the act directly or indirectly results in such confinement; and (3) the person confined is conscious of his confinement. *Moore v. Detroit*, 252 Mich. App. 384, 387 (2002). The above elements are easily met in this case. Clearly, Defendants' intent in arresting Plaintiff was to confine him. Second, it is undeniable that Defendants' arrest of Plaintiff directly resulted in his confinement, as Plaintiff was held in the back of Defendant Lilly's patrol vehicle. Finally, there are no facts in this case to suggest that Plaintiff was not conscious of his confinement. Therefore, Defendants' motion must be denied.

## IV.    CONCLUSION

In light of the evidence and arguments set forth above, there can be no dispute that Defendant's Motions for Summary Judgment must be DENIED in their entirety. Therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motions for Summary Judgment.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**BY: /s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
(248) 698-3321 – fax
shawn.cabot@cjtrainor.com

Dated: April 12, 2017
SCC/jrr